```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
DONNA M. DANZA,                                             :
                                    Plaintiff,              :     **MEMORANDUM DECISION**
                                                            :     **AND ORDER**
                    - against -                             :
                                                            :     18-cv-6841 (BMC)
COMMISSIONER OF SOCIAL SECURITY,                            :
                                                            :
                                    Defendant.              :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not entitled to Social Security Disability benefits under the Social Security Act.

Plaintiff raises four points of error. First, she contends that the ALJ did not properly evaluate the opinions of her treating physicians. Second, she contends that the ALJ failed to properly develop the record with regard to plaintiff's alleged radiculopathy. Third, she contends that the ALJ wrongfully omitted diagnoses of fibromyalgia and migraines as "severe impairments" at step 2 of the five-step sequential analysis. See 20 C.F.R. § 404.1520(a)(4)(iii) and (c). And fourth, she contends that the ALJ failed to properly evaluate the credibility of Ms. Danza's testimony. For the reasons stated below, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted.

# DISCUSSION

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's findings to ensure that they are supported by "substantial evidence," i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). Here, substantial evidence supports the Commissioner's findings; and where it may not, any error is harmless.

Plaintiff's claimed disability onset date is June 19, 2014 and her date last insured is December 31, 2014. Therefore, in order to be eligible for Social Security Disability benefits, plaintiff must have shown that she had a disability between June 19, 2014 and December 31, 2014.

## I.

Plaintiff first argues that the "ALJ failed to follow the treating physician rule and failed to properly evaluate the opinion evidence of the treating physicians." "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not afford a treating physician's opinion controlling weight, she must still "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28 (2d Cir. 2004).

Among the factors that the ALJ must consider when deciding whether to give a treating physician's opinion controlling weight are "the length of the treatment relationship and the

frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess, 537 F.3d at 129 (internal quotations and alterations omitted). If, however, "a searching review of the record" assures the reviewing court "that the substance of the treating physician rule was not traversed," the court should affirm the ALJ's decision despite her "failure to 'explicitly' apply the Burgess factors." See Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019).

The ALJ gave "little weight" to the opinions of three of plaintiff's treating physicians and gave "substantial weight" to most of the opinions of the medical expert, Dr. Brown. She also gave little weight to the internal medicine consultative examiner's opinion that "the claimant had no exertional limitations" because "Dr. Govindaraj is not a treating physician, did not review the claimant's medical record, and his physical exam findings are inconsistent with diagnostic testing and physical examination findings by various treating physicians, and with the opinion of medical expert, [Dr.] Brown."

The ALJ's decision to give little weight to plaintiff's rheumatologist, Dr. Mosak, is justified by the record. The ALJ noted that Dr. Mosak based his limitations opinion upon the "claimant's diffuse pain in the neck and lower back, persistent fatigue, frequent migraines, and numbness and tingling." But she found that these limitations and symptoms were inconsistent with Dr. Mosak's own treatment and physical examination findings.

The Court agrees. On October 7, 2014, Dr. Mosak specifically noted that plaintiff "denied back pain, carpal tunnel syndrome, muscle weakness, myalgias and neck pain." On November 12, 2014, Dr. Mosak noted that "[t]he patient denied dizziness, headache and

3

weakness" and again reported that "patient . . . denied back pain, carpal tunnel syndrome, muscle weakness, myalgias and neck pain." Additionally, as late as November 12, 2014, the patient self-reported that her symptoms only "moderately limit[] activities" and she described her pain as "moderate."

Moreover, even after December 31, 2014 – past the date last insured – Dr. Mosak's treatment notes contradict his later limitations opinion. For example, on July 28, 2015, Dr. Mosak reported that plaintiff has "full range of motion" and had a "normal gait and normal station." Although plaintiff complained of "stiffness," that appears to be limited to the morning and just for between 45 and 60 minutes.

The ALJ's decision to give little weight to the opinion of plaintiff's treating primary care physician, Dr. Frank Scafuri, is also justified. Dr. Scafuri noted in plaintiff's Disability Impairment Questionnaire that he first treated plaintiff in February 2014. He opined in that questionnaire, however, that as of October 1, 2009,[1] plaintiff could only sit or stand for less than 1 hour (needing to get up every 10-20 minutes and sit back down after 5 minutes); could not lift anything that weighed 10 lbs. or more; could not carry anything that weighed 5 lbs. or more; and would be unable to concentrate for between one-third and two-thirds of a given 8-hour workday due to pain, fatigue, or other symptoms. But even as late as August 3, 2015, Dr. Scafuri's own treatment notes contradict these very serious limitations.

On August 3, 2015, plaintiff went for a "sick visit" to Dr. Scafuri because she was concerned that she may have ingested some mold from a butter container. Besides a "softer than normal but not diarrhea" bowel movement, plaintiff had "no other complaints at this time." Dr.

---

[1] Plaintiff appears to have adjusted her disability onset date from March 17, 2009 to June 19, 2014 sometime in 2017.

4

Scafuri's physical examination was just as mundane.  Her neck had full range of motion and she had no muscular tenderness or spasm.  Although Dr. Scafuri noted that "[p]atient reports she suffers from cervical disc DZ with radiculopathy, lumbar disc radiculopathy, carpal tunnel BIL, arthritis, [and] Raynaud's," these were self-reported ailments and nothing in Dr. Scafuri's report comes close to supporting the severe limitations he points out in his questionnaire.

Regardless, on October 19, 2014, Dr. Scafuri checked a box on a New York State disability questionnaire saying: "I cannot provide a medical opinion regarding this individual's ability to do work-related activities."  On that same form, Dr. Scafuri further expressly stated that he "defer[s]" to plaintiff's specialists (for rheumatology, neurology, and neurosurgery) for a determination of the "duration and prognosis of claimant's condition."  The ALJ was therefore justified in giving Dr. Scafuri's limitations opinions "little weight" – indeed, even a finding of "no weight" could well be supported under these circumstances.

Finally, although more tersely stated than would be ideal, the ALJ's decision to afford little weight to plaintiff's neurologist, Dr. Ida Altshuler, is justified by the record.  While Dr. Altshuler opined in her impairment questionnaire that plaintiff would be limited to less than sedentary work, her physical examinations and treatment records of plaintiff counsel otherwise.  For example, Dr. Altshuler's treatment notes for June 19, 2014 reflect that plaintiff's neck pain was intermittent, her lower back pain was intermittent, and she only suffered headaches with a usual frequency of three times per month (albeit severe).  She also noted that plaintiff "denies any change in gait."

Additionally, Dr. Altshuler's June 14, 2014 physical examination yielded findings that plaintiff "is well-developed, and well-nourished, appears her stated age, and not in acute distress."  Further, "patient is awake, alert, and oriented to time, place, and person."  Because

5

these observations were consistent with plaintiff's other treatment notes, and contradicted the questionnaire filled out two years later, the ALJ was justified in affording Dr. Altshuler's limitations questionnaire little weight.

Plaintiff also argues that an ALJ cannot conclude *merely* from a treating physician's conservative treatment that plaintiff is not disabled. This is correct, see Burgess, 537 F.3d at 129, but a conservative treatment *may* be considered "if that fact is accompanied by other substantial evidence in the record," id. Here, the conservative treatments accompany the physicians' ordinary examinations with rather mild concerns through the end of 2014 – the ALJ can therefore consider it as further evidence of non-disability.

In any event, it is clear that the ALJ had adequate and independent reasons for her findings besides the conservative treatments. Also significant is that consultative physician Dr. Brown's "opinion is consistent with the physical examinations performed by the treating physicians and her conservative treatment." This supports the ALJ's decision to assign his opinion substantial weight. See Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993) (permitting "the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record").

II.

Plaintiff's second point of error is that the ALJ failed to properly develop the record with regard to plaintiff's alleged radiculopathy. Although the ALJ determined that plaintiff had severe impairments of carpal tunnel syndrome, degenerative disc disease, and arthritis, she did not find the same for radiculopathy. Plaintiff argues that it was improper for the ALJ to adopt the opinion of the medical expert, who disagreed that plaintiff has radiculopathy, and should

6

have "re-contacted each physician to request additional information" about their opinions regarding radiculopathy to resolve any ambiguities.

Although the claimant in a social security disability case bears the burden to prove her disability, the "ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings." Shaw v. Chater, 221 F.3d 126, 131-32 (2d Cir. 2000). However, if "the record contained sufficient other evidence supporting the ALJ's determination and . . . the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record." Johnson v. Colvin, 669 Fed. App'x 44, 46 (2d Cir. 2016).

Here, the ALJ relied on Dr. Brown's reasoning that although "radiculopathy [is] noted on an EMG study, [there was] no peripheral denervation findings." As Dr. Brown explained: "According to the American Academy of Neuromuscular Medicine, for there to be a diagnosis . . . of radiculopathy, there needs to be peripheral findings in two [] different nerves with the same nerve root." However, in reviewing the data, he did not find any evidence of peripheral findings. The Commissioner argues that this is consistent with the June 19, 2014 treatment notes of plaintiff's neurologist, Dr. Altshuler, who stated that "peripheral neuropathy has to be ruled out" before she can confirm a radiculopathy diagnosis. Therefore, the Commissioner contends that the record "contained sufficient other evidence" to support the ALJ's reliance on Dr. Brown's opinion in this regard. See Johnson, 669 Fed. App'x at 46.

The issue is not quite so clear-cut. The July 21, 2014 EMG/Nerve Conduction Study suggested that plaintiff *did* exhibit "C5-6 radiculopathy" and "L4-5 radiculopathy." And Dr. Altshuler actually said plaintiff had *probable* lumbar radiculopathy in her June 19, 2014 treatment notes.

7

Nevertheless, the Commissioner is correct in his assertion that because the ALJ's analysis proceeded past step two, any error in this regard would be harmless. See Woodmancy v. Colvin, 577 Fed. App'x 72, 74 n.1 (2d Cir. 2010) ("[W]e identify no error warranting remand because the ALJ did identify severe impairments at step two, so [plaintiff]'s claim proceeded through the sequential evaluation process, in which all of [plaintiff]'s ailments were part of the analysis."). Here, the ALJ made findings at step two that plaintiff did suffer from several severe impairments. As a result, the ALJ continued her analysis past step two and proceeded to determine whether all of plaintiff's ailments together rendered plaintiff capable of functional performance in the national economy. This assessment included the symptoms and limitations that plaintiff claims were a result of radiculopathy. Therefore, whether the ALJ properly determined that plaintiff did not exhibit the accepted criteria for radiculopathy is, in this instance, immaterial because it did not affect either the ALJ's ultimate decision or her process of reaching that decision.

III.

Plaintiff's third point of error is that the ALJ "failed to consider Ms. Danza's diagnosis of fibromyalgia" when formulating her residual functional capacity ("RFC") assessment. She argues that "[t]his is an error which precludes meaningful review" of her ability to return to employment.

As discussed above, "[w]here an ALJ excludes certain impairments from the list of severe impairments at the second step, any such error is harmless where the ALJ identifies other severe impairments such that the analysis proceeds and the ALJ considers the effects of the omitted impairments during subsequent steps." Calixte v. Colvin, No. 14-cv-5654, 2016 WL 1306533 (E.D.N.Y. mar. 31, 2016); Woodmancy, 577 Fed. App'x at 74 n.1. The Court finds that

the ALJ did, in fact, properly consider fibromyalgia and its attendant symptoms in the subsequent steps.

First, the ALJ noted toward the beginning of her analysis that "[t]he claimant was then diagnosed with chronic neck pain and low back pain with possible . . . fibromyalgia." She then pointed out that it was "not until 2016 that the claimant was consistently treated with . . . fibromyalgia medication" and that in *November 2016* – over two years after plaintiff's claimed disability onset – "the claimant was diagnosed with . . . fibromyalgia." Nevertheless, the ALJ proceeded to analyze all of plaintiff's claimed impairments holistically and functionally, as required under the regulations:

> During the disability hearing in December 2016, the claimant testified that she experienced severe back pain, neck pain due to a pinched nerve, daily migraines, and carpal tunnel syndrome in her left hand. The claimant's wrist would often give out when performing grooming activities. Additionally, the claimant experienced difficulties carrying objects or doing her dishes, but she was able to shower and go shopping independently. . . . The claimant alleged that she was able to walk for 20 to 25 minutes, stand for 15 to 20 minutes, sit for 20 minutes, and only carry no more than 10 pounds. (Hearing Testimony). She also reported not being able to cook or clean without the help of her son and attending church once a week.

These considerations cover most or all of the functionality-related impairments of fibromyalgia that plaintiff points out in her brief: muscle pain, fatigue, headaches, insomnia, difficulty thinking, numbness or tingling, dry mouth, and Raynaud's phenomenon.[2] They also take into account the migraines that plaintiff claims the ALJ elided in her analysis.

Ultimately, while acknowledging these symptoms and recognizing that plaintiff had been diagnosed with certain ailments "which would cause pain and some limitations to the claimant's ability to perform activities of daily living," the ALJ concluded: "[T]he claimant's physical

---

[2] Admittedly, the Court does not perceive an analysis of plaintiff's dry mouth in the ALJ's functionality discussion.

9

examinations demonstrated diminished sensation and tenderness in her fingers and toes, but normal muscle strength, reflexes, and range of motion. She has also retained the ability to ambulate normally without any assistive device."

IV.

Plaintiff's final point of error is that the ALJ "failed to properly evaluate the credibility of [plaintiff's] testimony" by relying on insufficient reasons in reaching her adverse credibility determination. Specifically, plaintiff faults the ALJ with (1) relying on plaintiff's conservative treatment; (2) over-weighing clinical findings against plaintiff's allegations; and (3) mistakenly concluding that plaintiff was "not medically compliant" with regard to taking her prescribed medication.

Regarding plaintiff's subjective complaints, the ALJ said the following:

> Although the claimant started complaining of joint pain prior to [December 31, 2014], and examinations showed some tenderness in her fingers and toes, she was being treated with Advil until a month prior to the date last insured. Then, treating source Dr. Mosak prescribed 5 months of Plaquenil suspecting the claimant may have fibromyalgia and osteoarthritis. However, the claimant apparently did not have symptoms severe enough to fill this prescription more than one time, according to her report to the consultative examiner and the prescription log.

"Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account." C.F.R. § 404.1529(c). The types of evidence considered in this analysis include: daily activities; the location, duration, frequency, and intensity of the pain; the type, dosage, effectiveness, and side effects of medication; and any pain relief treatment other than medication. Id.

Here, the ALJ properly relied upon the permitted types of evidence in assessing plaintiff's subjective reports of pain. She noted the location (fingers and toes) and the intensity (some tenderness) of plaintiff's pain prior to the date last insured. The ALJ also discussed the type of medications prescribed (Advil and Plaquenil) as well as the reasons plaintiff was prescribed them. Although plaintiff points out that "conservative treatment for pain is not, in and of itself, a sufficient basis for rejecting an applicant's complaints," see Rivera v. Barnhart, No. 04-cv-6149, 2005 WL 355501, at *9 (W.D.N.Y. Dec. 9 2005), the ALJ plainly relied upon other evidence in weighing plaintiff's credibility.

Indeed, plaintiff even complains about the other such evidence – that she was "non-compliant with her Plaquenil prescription because she only filled it one time." This conclusion, too, is backed up by the record despite plaintiff's protestations that there wasn't "any evidence of such non-compliance." The record shows plaintiff's prescriptions filled between February 5, 2014 and December 22, 2016, and there is only one instance of plaintiff filling her Plaquenil (Hydroxychloroquine) prescription. And Dr. Govindaraj noted in his write-up that "[p]atient also saw Dr. Mosak . . . for the osteoarthritis and patient also was given hydroxychloroquine 200 mg tablet two once a day. Patient does not take it."

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is denied and the Commissioner's cross-motion for judgment on the pleadings is granted.  The Clerk is directed to enter judgment, dismissing the complaint.

**SO ORDERED.**

                                                                                            _____
                                                                                                             U.S.D.J.

Dated:  Brooklyn, New York
         November 14, 2019